UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------

S.W., *a minor, by and through his mother* LYNDSEY WOJCEHOWICZ, *et al.*,

    Plaintiffs,

vs.

United States of America, *et al.*,

    Defendants.

------------------------------------------------------------

Case No. 1:19-cv-2947

OPINION & ORDER
[Resolving Docs. 69, 70, 71, 74]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this Federal Tort Claims Act medical malpractice case, Defendant United States of America sought the depositions of three physicians—Drs. Lenora Lehwald, Jonathan Pindrik, and Laurel Slaughter—who treated Plaintiff S.W. after his December 23, 2015 birth. The three physicians, through counsel, each refused to be deposed voluntarily, and the United States subpoenaed them to give testimony.[1] The three physicians, joined by Plaintiffs, now move to quash each of the subpoenas.[2] The government opposes,[3] and the physicians reply.[4]

For the reasons stated below, the Court **DENIES** Drs. Slaughter and Pindrik's quash motions and **GRANTS** Dr. Lehwald's quash motion.

I.      DISCUSSION

Generally, parties may obtain discovery regarding any matter not privileged that is relevant to the subject matter involved in the pending action.[5] And parties may issue

---

[1] Doc. 69-1; Doc. 70-1; Doc. 71-1 (Lehwald, Pindrik, and Slaughter subpoenas, respectively).
[2] Doc. 69; Doc. 70; Doc. 71; Doc. 74.
[3] Doc. 73.
[4] Doc. 77.
[5] Fed. R. Civ. Pro. 26(b)(1).

Case No. 1:19-cv-2947
Gwin, J.

subpoenas to compel non-parties to give testimony or produce documents.[6] A subpoena must be quashed or modified, however, when it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in [Federal Rule of Civil Procedure] 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."[7]

### A. Procedural Defects

The physicians first argue that the United States' subpoenas are procedurally deficient on two grounds, requiring them to be quashed. First, the physicians claim that the United States did not pay the required fees and mileage sums to the physicians under Federal Rule of Civil Procedure 45(b)(1). But as the United States points out, the very same rule provides that "[f]ees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies."[8]

Second, the physicians argue that the subpoenas failed to specify a deposition recording method as required under Federal Rule of Civil Procedure 45(a)(1)(B). But, as the parties seem to acknowledge, this defect was cured by a subsequent subpoena, and, at any rate, failure to provide a recording method is not one of provided reasons requiring courts to quash or modify a subpoena.[9]

### B. Scope of Testimony

1. Expert Report Under Federal Rule of Civil Procedure 26(a)(2)(B)

---

[6] Fed. R. Civ. Pro. 45.
[7] Fed. R. Civ. Pro. 45(d)(3)(A).
[8] Fed. R. Civ. Pro. 45(b)(1).
[9] *Oliver v. In-N-Out Burgers*, No. 12-cv-767, 2013 WL 12415761, at *3 n.2 (S.D. Cal. Feb. 7, 2013).

Case No. 1:19-cv-2947
Gwin, J.

Next, the physicians argue that the subpoenas improperly ask them to give expert testimony without submitting an expert report. The physicians have not been retained by either party for the purpose of providing expert testimony. Yet the United States believes that the physicians may have formed opinions regarding the cause of Plaintiff S.W.'s injury while treating S.W. The physicians, joined by Plaintiffs, argue that such causation testimony would be improper absent a written expert report from the physicians, as required by Federal Rule of Civil Procedure 26(a)(2)(B). The United States disagrees.

Addressing this precise issue, the Sixth Circuit has stated that treating physicians may offer expert opinions, including on causation issues, without offering a written expert report, so long as reaching such an opinion was "within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination."[10]

"[A] medical doctor is generally competent to testify regarding matters within his or her own professional experience,"[11] and so long as a treating physician did not first form a medical opinion in anticipation of litigation, the treating physician may offer the opinion without necessarily providing a Rule 26(a)(2)(B) report.[12]

Each of the subpoenaed physicians personally treated S.W. before the present suit was filed, and each of them may have formed a causation opinion about S.W.'s injury, especially Dr. Slaughter, a pediatric neurologist who, as alleged in the complaint, first

---

[10] *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869–70 (6th Cir. 2007).
[11] *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 427–28 (6th Cir. 2009).
[12] *Fielden*, 482 F.3d at 871 (citing *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 811 (6th Cir. 2005)).

Case No. 1:19-cv-2947
Gwin, J.

diagnosed S.W. with cerebral palsy.[13] Dr. Slaughter also communicated to S.W.'s parents that S.W.'s injury might have resulted from medical negligence.[14] And while Dr. Lehwald and Dr. Pindrik may have been less involved in the discovery of S.W.'s claim, they were a pediatric neurologist[15] and a pediatric neurosurgeon[16] who may have brain injury causation conclusions reached while treating S.W.

Therefore, under *Fielden*, each subpoenaed physician may testify about an expert causation opinion they reached regarding S.W.'s injury in the ordinary course of treating S.W. Further, each physician might have relevant fact testimony regarding what communications, if any, they had with S.W.'s parents about the cause of S.W.'s injury. The United States' physician subpoenas therefore seek proper testimony.

Crucially, however, *Fielden* does not apply to standard of care testimony, as forming a standard of care opinion is not part of the ordinary course of treatment. Accordingly, the physicians would be required to submit an expert report under Rule 26(a)(2)(B) before offering testimony on the applicable standard of care.

The Court earlier established expert witness disclosure dates. The United States did not identify or provide a report for any of the physicians. Therefore, the United States cannot use the physician's testimony on standard of care issues.[17]

*2. Expert Testimony Summary Under Federal Rule of Civil Procedure 26(a)(2)(C)*

---

[13] Doc. 31 at 12–13.
[14] *Id.*
[15] Doc. 69 at 6.
[16] Doc. 70 at 3.
[17] Fed R. Civ. Pro. 37(c)(1).

Case No. 1:19-cv-2947
Gwin, J.

The physicians alternatively argue that even if they need not provide Rule 26(a)(2)(B) reports prior to giving expert causation testimony, that testimony still requires a Rule 26(a)(2)(C) opinion summary. Under Rule 26(a)(2)(C), even if Defendant United States is excused from providing an expert report for the physicians, the United States must nonetheless disclose: "the subject matter on which [each] witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and a summary of the facts and opinions to which [each] witness is expected to testify."

For Rule 26(a)(2)(C) purposes, mere reference to unspecified testimony is insufficient.[18] "Although the information required under Fed. R. Civ. P. 26(a)(2)(C) is less extensive than an expert report under 26(a)(2)(B) . . . the two forms of disclosure share the goal of increasing efficiency and reducing unfair surprise."[19] To that end, the United States must give a detailed summary of the opinions the physicians might testify to at trial.

Unless a different disclosure date is set by the Court, this Rule 26(a)(2)(C) disclosure must be made "at least 90 days before the date set for trial or for the case to be ready for trial." This case is set for trial on June 7, 2021.[20] If seeking to offer expert opinion testimony from Dr. Lehwald, Dr. Pindrik, or Dr. Slaughter, Defendant was required by March 9, 2021, to disclose a summary of their expected testimony together with a summary of the facts and opinions they are expected to rely upon.

Because the United States did not provide the needed disclosures, the physicians argue, that the government may not use their testimony.

---

[18] *Ingram v. Novartis Pharms. Corp.*, 282 F.R.D. 563 (W.D. Okla. 2012).
[19] *Brown v. Providence Med. Ctr.*, No. 8:10-cv-230, 2011 WL 4498824, at *1 (D. Neb. Sept. 27, 2011) (original alternations).
[20] Doc. 44.

Case No. 1:19-cv-2947
Gwin, J.

The Court agrees that such disclosures are required before the United States can take trial testimony from these physicians. But Defendants apparently seek discovery, not trial testimony. Federal court litigation recognizes the right to every person's evidence. In this case, the Defendant United States raises a statute of limitations defense. The physicians may have knowledge of statements they made to Plaintiffs, or knowledge of statements Plaintiffs made to them, relevant to when this cause of action accrued. The physicians therefore can give relevant fact testimony.

As discussed above, Defendant United States may also seek causation testimony from the physicians provided that Defendant first lays the foundation that the causation determination relates to the treatment they provided to S.W. The physicians, however, cannot give standard of care testimony.

The Court notes that the physicians may not have examined the S.W. delivery and pregnancy records. It is therefore unclear whether they would be qualified under *Daubert* to give opinion testimony at trial regarding what caused S.W.'s condition. However, the Court can deal with that issue later if Defendant seeks to offer causation expert testimony from the physicians at trial.

C. *Undue Burden*

Finally, the physicians argue that the deposition subpoenas are unduly burdensome because of their schedules, because the United States already has access to the relevant medical records, because the depositions will burden S.W.'s ongoing care relationship with Drs. Slaughter and Pindrik, and because Dr. Lehwald has moved to Indiana, does not

Case No. 1:19-cv-2947
Gwin, J.

currently treat S.W., no longer has access to relevant S.W. medical records, and does not remember treating S.W.

Undue burden is assessed in a case-specific manner considering such factors as relevance, the need of the requesting party, the breadth of the request, and the burden imposed.[21] Courts must "balance the need for discovery against the burden imposed on the [subpoenaed] person, and the status of that person as a non-party is a factor weighing against discovery."[22]

Although they will be subject to some burden, the Court believes it is appropriate for Drs. Slaughter and Pindrik to submit to time-restricted Zoom depositions. The physicians remember their relationship with S.W., presently treat S.W.'s condition, and may have factual evidence relevant to statute of limitations accrual dates. They can be asked questions relevant to their communications to Plaintiff that could have caused the statute of limitations to accrue.

Drs. Slaughter and Pindrik still have access to S.W.'s medical records and will have knowledge of any communications they made to Plaintiffs outside the scope of the medical records. The Court notes that it is not asking Drs. Slaughter and Pindrik to "testify against" S.W. Rather, it is asking Drs. Slaughter and Pindrik to truthfully answer deposition inquiries.

However, the Court will quash the subpoena for Dr. Lehwald as unduly burdensome. Dr. Lehwald has since moved to a different practice in a different state, has no ongoing relationship with S.W., does not remember S.W., and does not have access to S.W.'s medical records. Dr. Lehwald's deposition testimony would therefore produce a low discovery return

---

[21] *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018).
[22] *Id.*

Case No. 1:19-cv-2947
Gwin, J.

at a high resource demand. The Court therefore will not require Dr. Lehwald to give deposition testimony.

Further, to avoid unduly burdensome cost upon Dr. Pindrik and Dr. Slaughter, the Court will limit each side's questioning to 80 minutes.

## II. CONCLUSION

For these reasons, the Court **DENIES** Drs. Slaughter and Pindrik's quash motions and **GRANTS** Dr. Lehwald's quash motion. The United States may depose Drs. Slaughter and Pindrik via Zoom for 80 minutes each. In setting the date, time, and subject matter for the depositions, the Court directs the United States to take great care to accommodate Drs. Slaughter and Pindrik's busy schedules.

IT IS SO ORDERED

Dated: March 10, 2021                    *s/    James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE